## In re FLORIDA POWER & LIGHT CO.
No. 9777-EU, 4442.

Florida Public Service Commission.

October 21, 1968.

Edward J. Winter, Jr., Miami, for Mr. Kaufman.

Lewis W. Petteway, Tallahassee, for the commission and the public generally.

Chairman WILLIAM T. MAYO, Commissioners JERRY W. CARTER and EDWIN L. MASON participated in the disposition of this matter.

## BY THE COMMISSION.

This is an investigation instituted by the three public service commissioners, acting on their own motion and initiative, for the purpose of determining whether the earnings, and rates and charges, of Florida Power & Light Company are fair and reasonable and, if not, then what adjustments should be made to assure reasonable rates and charges for the customers of said electric utility. Order no. 4411, issued in this docket on August 15, 1968, by means of which this investigation was initiated, directed Florida Power & Light Company to justify, if it can, its present rates and charges, and earnings, as being fair and reasonable. This matter was set for a public hearing to be held in Miami on October 16, 1968; and notice was given that all interested parties would be given an opportunity to be fully heard at that time and place.

After this proceeding was formally initiated by the commissioners, several interested parties filed with the commission written petitions for leave to intervene and participate in the investigation. Those who, thus far, have filed written petitions for leave to intervene are the Florida Hotel and Motor Hotel Association, the city of Miami, and Robert Scott Kaufman, a customer of Florida Power & Light Company. The petition of Robert Scott Kaufman was granted by order no. 4421 issued herein on September 18, 1968.

On October 15, 1968, the day before the public hearing was scheduled to begin in Miami, and twenty-six days after his intervention was allowed, Robert Scott Kaufman filed with the commission his suggestion of disqualification of the three members of this commission. When the time came for the hearing to convene, the commissioners advised the public gathered at the place where the hearing was to have been held that the suggestion of disqualification had been filed and would have to be considered by the commissioners. The public hearing was recessed pending disposition of the suggestion by the commissioners.

The three commissioners, against whom the suggestion of disqualification was filed, are the duly elected and qualified members of the Florida Public Service Commission. This commission is an agency of the state legislature to which has been delegated the legislative function of fixing just, reasonable, and compensatory rates for various public utilities, including Florida Power & Light Company.

In the exercise of their statutory duties, the three commissioners maintain a continuing surveillance over the rates and charges, and earnings, of all public utilities under their jurisdiction. From time to time, this continuing surveillance is supplemented by formal investigations in which proceedings interested parties frequently intervene and participate. In the present proceeding, there is pending before the commissioners no request or application for any increase in the rates and charges, or earnings, of Florida Power & Light Company. The burden in this proceeding is upon Florida Power & Light Company to justify, if it can, its present rates and charges, and earnings, as being fair and reasonable.

The intervenor, Robert Scott Kaufman, has filed herein his affidavit suggesting the disqualification of each of the members of this commission for bias and prejudice. Accompanying the affidavit of the intervenor are two supporting affidavits. These affidavits purport to be in compliance with the requirements of the statutes which control the disqualification of members of a commission having quasi-judicial powers. §120.09, Florida Statutes, provides that such commissioners may be disqualified in the same manner, and to the same extent, as circuit judges. §38.10, Florida Statutes, provides the method of disqualifying circuit judges.

The principal requirements of the statutes are that the affidavit of disqualification shall state the facts and the reasons for affiant's belief that bias and prejudice exist to such an extent that he will not receive a fair trial. The statutes also require that the facts stated as a basis for making the affidavit of disqualification shall be supported by the affidavits of at least two reputable citizens of the county.

Because of its extreme importance, and the impact this matter could have on orderly regulatory rate making in the future, each member of the commission has given the matter the most careful consideration. This is the second time this same intervenor has attempted to disqualify all three members of the commission during an investigation of the rates and charges, and earnings, of Florida Power & Light Company. The first instance was in 1965 and the efforts to disqualify the commissioners were unsuccessful before

the commissioners, before the Dade County Circuit Court, and before the Supreme Court of Florida. The disqualification attempt in 1965, likewise, was based on allegations of bias and prejudice. Such attempts as this, if successful, could be far-reaching in their effect. Rate investigations of the magnitude of the instant proceeding involve millions of public utility customers in the state of Florida. If one individual public utility customer can by this means control or prevent major rate investigations by the commission, then the regulatory process as devised and constituted by the legislature will be completely thwarted — because when millions of people are involved, there can always be found persons who will make such affidavits of bias and prejudice as those involved in this proceeding. This is, then, a matter of extreme importance regardless of who the people may elect as their commissioners from time to time.

We recognize that public confidence in this commission requires that cases be tried, and investigations conducted, by unprejudiced and unbiased commissioners. It is our understanding that "bias" and "prejudice" refer to the mental attitude or disposition of the judicial or quasi-judicial officer toward a party to the proceeding. The words mean a hostile feeling or a spirit of ill will toward one of the parties litigant, or an undue friendship or favoritism toward one. Each member of this commission, by separate statement attached hereto and made a part hereof, has announced that he has no bias or prejudice for or against anyone connected with this proceeding. Each commissioner recognizes, however, that in a matter of this kind he cannot refuse to recuse himself on the basis of his denial of bias or prejudice. However, each one, likewise, recognizes that it is his duty under the law to determine the legal sufficiency of the affidavits suggesting his disqualification. If the allegations are legally sufficient to state facts showing disqualifying bias or prejudice, then recusal should follow. If, on the other hand, the affidavits are not legally sufficient to show bias or prejudice, then we have a duty to deny the suggested recusal and proceed with the hearings as previously intended.

A careful analysis of the disqualifying affidavit of the intervenor, Robert Scott Kaufman, discloses that the facts alleged therein are legally insufficient to show bias or prejudice. The first numbered paragraph of the affidavit merely cites the statutory authority for the disqualification of a commissioner and a circuit judge. The second numbered paragraph cites the statutory requirement that a public hearing is required before the commission can authorize a change in rates. Then the affiant alleges that the commission authorized public utilities to increase their "take" without first

holding a public hearing. At the same time, the affiant recognized in said paragraph that such increases were rescinded. Order no. 4400, entered in docket no. 7739-PU on July 30, 1968, recited the various orders which had authorized utilities to pass on to their customers (on a temporary basis) the 10% federal income tax surcharge imposed by the Revenue and Expenditure Control Act of 1968, and then set forth the commission's basis for rescinding said orders in the following languages —

"After the aforesaid orders were issued, an application for temporary relief of a similar nature was received from General Telephone Company of Florida in docket no. 9368-TP. General's application was filed in its pending case for a general increase in its intrastate rates. Accordingly, General's application for temporary relief was set for a public hearing which was held by the commission on Wednesday, July 23, 1968, in Clearwater, Florida, as a step in General's pending rate case. *Public hearings were not held before the other orders were issued, because the commission did not consider that the temporary relief was in any way related to the utilities' basic rates, but was limited to the recovery of increased taxes. Previously, the commission had, without public hearings, required the public utilities to pass on to their customers savings brought about by the 1964 and 1965 reduction in federal income taxes. However, during the hearing on the application of General Telephone Company to pass on the income tax surcharge, many questions were raised which the commission feels are sufficient to require public hearings so that some answer can be found, if possible, to the many problems which give rise to such questions.*"

The order then recited several important questions which had developed at the hearing on General's application. On this basis, the commission, on its own motion, vacated each of the orders previously issued and required the public utilities involved to refund any collections they may have made under said orders. The intervenor, Robert Scott Kaufman, disagrees with the commissioners' action in authorizing the utilities to pass on the 10% surtax without a public hearing. Certainly errors of judgment by the members of an administrative agency, particularly when such errors are subsequently corrected on the agency's own motion, cannot be made the basis of disqualification for bias or prejudice even though some ratepayer may disagree with the original action and construes it to have been contrary to the requirements of the statutes. In this jurisdiction, it is well recognized that decisions of administrative agencies are subject to judicial review; thus, the public is

protected against errors that may be made in the administrative process.

The third numbered paragraph of the disqualifying affidavit recites canon of judicial ethics no. 7 adopted by the Supreme Court of Florida which is "A judge should be prompt in the performance of his judicial duties." Then the affiant declares that the commissioners commenced a hearing regarding Florida Power & Light Company rates in January 1965 and did not enter an order therein, finally reducing the company's rates by the annual amount of $7,073,000 until November 1966. The affiant terms this an "unconscionable delay" resulting in "a gift of approximately $13 Million to Florida Power & Light Company." Affiant overlooks the many months spent in hearings in said investigation, the many weeks required by the parties for briefing, and the long period of time necessarily devoted to study and analysis of the thousands of pages of testimony and exhibits, before a decision could be reached on the complex questions involved. He also overlooks the fact that during the pendency of the investigation, the commissioners required the company to reduce its rates $3,750,000 effective February 1, 1965, and $9,467,000 effective January 1, 1966, prior to the final reduction required in November 1966 of $7,073,000. In his efforts before the Supreme Court of Florida to disqualify the three commissioners in 1965, this intervenor recognized that major rate cases do take considerable time when he made the following statement in his suggestion for writ of prohibition:

". . . rate hearings by their very nature are unusually protracted, sometimes lasting for months, as is probable in the instant docket. The testimony or appearance of over one hundred persons will probably be taken before the hearings are concluded and a transcript of the proceedings therein will be many feet thick, (as is probable with the addition of exhibits)."

The intervenor, Robert Scott Kaufman, failed to take advantage of his right to have the commission's decision in the previous Florida Power & Light Company rate case reviewed by the Supreme Court of Florida, although it was reviewed by said court on the petition of the city of Miami; and the commission's decision was affirmed by that court in an opinion handed down on January 15, 1968 — although the petition for certiorari was filed in the Supreme Court by the city of Miami in January 1967. The time required to reach a decision by the commission cannot be construed as a fact on which a claim of bias or prejudice can be predicated.

After asserting that the commissioners were guilty of "unconscionable delay" in reaching a decision to reduce the rates of Florida Power & Light Company in 1966, the intervenor asserts that — " . . . now that Florida Power & Light Company wants a rate increase, there will be no delay." In support of this conclusion, the affiant refers to an article in the Miami Herald of August 1, 1968 in which the chairman of the commission, William T. Mayo, is quoted as describing the present investigation as being " . . . a crash program, taking 104% of our time." We have previously pointed out that this investigation does not involve any request by Florida Power & Light Company for an increase in its rates and charges. Affiant again refers to the order of the commission authorizing Florida Power & Light Company to pass on to its customers the 10% federal income tax surcharge, and his conclusion that the utility was prepared to collect the surcharge even before the commission's order was issued. As we have previously pointed out herein, the surtax order was vacated by the commission on its own motion and the utility was required to refund any moneys that it may have collected under said order.

In paragraph numbered 4 of his affidavit, the intervenor charges that Commissioner William T. Mayo "has already prejudged this case" in that on August 1, 1968, he was quoted by the Miami Herald as saying —

> " 'Frankly, I don't think there's going to be any astronomical decrease as the result of these hearings.' "

What is astronomical? Webster's dictionary defines it as meaning enormous or inconceivably large. If there is any inference to be drawn from this language which appeared in the Miami Herald, it is that there may be some reduction. Such an inference would favor the customer, not the utility, and certainly cannot be construed as a factual indication of bias against the intervenor and prejudice in favor of the utility.

Attached to intervenor's affidavit is what he has termed Rider I, which contains one final ground on which he bases his affidavit of disqualification. Here, he charges that the commissioners received campaign contributions from "persons directly connected with utilities, trucklines, and railroads which they regulate, ratewise. Most of this money came from attorneys pleading cases before them." In addition, he states that an article in the Miami Herald credits Commissioner Edwin L. Mason with having received $250 as a campaign contribution for his last political campaign for the commission in 1964 from a lawyer, George

Patterson. Then, upon information and belief, he states that George Patterson is a partner in a Miami law firm which represents "Florida Power & Light Company in this docket which is attempting to secure from Mr. Mason his vote for an increase in the people's electric rates."

An allegation that an administrative or judicial officer has received a campaign contribution from an individual attorney, even though he may represent someone before the administrative agency or court, in and of itself, is not a sufficient basis for a conclusion of bias or prejudice. Campaign contributions of these three commissioners are a matter of public record in the office of the secretary of state and will disclose scores of campaign contributions from individuals who are undoubtedly customers of public utilities. It would be absurd to conclude that a public utility could, on the basis of such contributions, disqualify the commissioners for bias or prejudice. Campaign contributions were last received by Commissioner Mason in April of 1964, and since that time he has voted in favor of substantial reductions in the rates and charges of many public utilities, including Florida Power & Light; all of which is well known to the affiant herein because he was a party in one investigation in which such reductions were required. More specifically, the rates of Florida Power & Light Company were reduced since 1964 as follows —

| | |
|---|---|
| May 1, 1964 | $10,000,000 |
| February 1, 1965 | 3,750,000 |
| January 1, 1966 | 9,467,900 |
| January 1, 1967 | 7,073,000 |

Said reductions total $30,290,900, all of which was well known to affiant. Commissioner Mayo became a member of the commission in September of 1964 and voted for all reductions since that time. Commissioner Carter voted for all reductions enumerated above. In addition, the three commissioners, on October 2, 1968 in this very docket, suspended the commodity adjustment clause of Florida Power & Light Company at a probable cost to said utility of approximately $750,000 annually. A copy of the order suspending the commodity adjustment clause was mailed to affiant on October 2, as it was to all other interested parties in this docket. It is unreasonable, in the light of the rate reductions required of Florida Power & Light Company during the past four years by these three commissioners which facts are well known to affiant, to assume that they are biased or prejudiced because of some past campaign contribution by an individual attorney who works in a law firm which represents the utility.

We must conclude from our analysis of the affidavit filed herein by the intervenor, Robert Scott Kaufman, that the allegations contained therein are legally insufficient under the statutes to show disqualifying bias or prejudice.

We must also consider the sufficiency of the two supporting affidavits. The statute requires that the facts stated as the basis for making the affidavit of disqualification shall be supported in substance by the affidavit of two reputable citizens of the county. The supporting affidavits are couched in the following language —

> "That your affiant supports the facts stated as a basis for making the aforesaid intervenor's affidavit, in substance, by your affiant who is a reputable citizen of Dade County and not of kin to any of the parties in this cause or the commissioners."

These supporting affidavits do not sufficiently comply with the requirements of the statute. The Supreme Court of Florida has held that the intent of the statute "is that the two accompanying affidavits shall show knowledge of the facts alleged in the affidavit charging prejudice of the judge and aver that such facts stated are true in substance." In the present docket there has been no effort to comply with the intent of the statute as construed by the Supreme Court.

Based upon our full consideration of the affidavit filed in this proceeding by Robert Scott Kaufman, intervenor, and the two supporting affidavits, seeking to disqualify each of the members of this commission, we, the individual members of this commission acting jointly and severally, hereby find that the affidavit of the intervenor, Robert Scott Kaufman, and the two supporting affidavits which accompanied the same, are legally insufficient to meet the requirements of the statute and do not on the face thereof show bias or prejudice on the part of either commissioner for or against anyone, or any reasonable basis for any feeling of bias or prejudice.

Now, therefore, in consideration thereof, it is ordered by Commissioner William T. Mayo, Commissioner Edwin L. Mason, and Commissioner Jerry W. Carter, that the suggestion of disqualification of them and each of them be and the same is hereby denied, and each of said commissioners does hereby decline to recuse himself from further participation in these proceedings.

It is further ordered by said commissioners that this order shall be issued forthwith by the Florida Public Service Commission, on

behalf of each of said individual commissioners, over the signature of the administrative secretary of the commission.

It is further ordered that the public hearing previously scheduled to begin in Miami on October 16, 1968, but temporarily recessed pending a decision on the suggestion of disqualification herein, shall be reconvened in Miami at the earliest possible date consistent with the commission's ability to make the necessary arrangements for suitable hearing room facilities. All interested parties will be advised of the time and place said reconvened hearing will be held.

WILLIAM T. MAYO, Commissioner.

I have carefully studied the affidavit of Mr. Kaufman and can find no valid basis for his suggestion that I am disqualified by reason of bias or prejudice to participate in this investigation. Further, I have searched my own conscience and can find no prejudice for or against any party participating in this proceeding.

I have never at any time while serving on this commission made a decision that I did not feel was based on sound, fair and honest reasoning after careful review of all facts involved. As long as I am a member of this commission I shall continue to make decisions in this same manner.

My fellow commissioners and I initiated this investigation voluntarily of our own accord in order that we might investigate the rates and charges, and earnings, of Florida Power & Light Company in depth for the purpose of assuring the public served by this utility that their electric rates are fair and reasonable.

I was elected by the people of Florida for the purpose of seeing that they have the best possible public utility services at the lowest reasonable cost and I will not voluntarily relieve myself of this obligation. During the four years that I have been a member of the Florida Public Service Commission we have reduced public utility rates in Florida almost $50 million on an annual basis. At the same time I have fought for and obtained from the legislature a law which will enable this commission to give consideration to the quality of service when fixing rates to be charged by public utilities. Under this law we have recently been able to withhold rate increases when the public was receiving poor service.

In the present situation I am perfectly willing and able to carry out my duties and intend to do so with neither bias nor prejudice but with complete fairness to all.

### JERRY W. CARTER, Commissioner.

For more than 35 years the people of Florida have chosen me in state-wide elections by overwhelming majorities to represent them as a member of this commission. They have trusted me and I have never violated their trust. As a public official it has been my philosophy to hold no bias or prejudice against anyone. I have been faithful to that philosophy. Every morning when I start life for that day, I forgive everybody. I don't care how mean, how unfair, how unjust they may have treated me, I forgive them.

Some effort is being made to turn campaign contributions by lawyers into something sinister and evil. Lawyers have frequently contributed to my campaigns. These officers of the courts are governed by canons of ethics and I always assume that any lawyer who has the good judgment to want me for a public official would not violate any ethical principle that his profession has established for his guidance.

Certainly, my long record of voting for reduction of public utility rates amounting to millions of dollars on an annual basis is well known throughout the state and is inconsistent with any suggestion that I could ever be prejudiced in favor of a public utility under my jurisdiction. I believe in treating public utilities fair and try to give them what the law says they are entitled to but nothing more.

I have always been a champion of the public and particularly the little man. He needs all the help he can get and it is my policy, well known to everyone, to help him in every legal and reasonable way that I can. For this reason, I find it difficult to understand how anyone could feel that I might be prejudiced in favor of a public utility; and, frankly, that may not be the real situation here. To me this looks more like the devious efforts of a public utility to disqualify commissioners who have consistently reduced its rates through the years without directly incurring the blame for such action. I may be wrong but this is the way it appears to me.

I have carefully examined my own feelings in this matter and I find no bias or prejudice in my heart against any citizen of the state of Florida, white or black, rich or poor, native or foreign-born, whether they happen to be customers of a public utility or whether they happen to be the owners or operator or employees of the utility.

I cannot in good conscience step aside in this investigation. It is my duty to participate in this investigation which we started and I wll do so with fairness to all who are interested in the rates of the utility under investigation.

EDWIN L. MASON, Commissioner.

Specific reference has been made in the disqualifying affidavit to a contribution of $250 to my campaign for re-election to this office. This requires a candid reply on my part.

It is well recognized that a candidate for public office must rely for financial contributions, and other material assistance in his campaign, on those members of the general public, including his friends, who believe such a candidate is well-qualified and, if elected, can and will do the best job for the public. When a citizen makes such a contribution, that fact alone should not cast him in the role of one who is seeking special favors or treatment. In our democratic way of life the giving and receipt of campaign contributions do not warrant a presumption of bias or prejudice. Such a presumption would constitute an indictment of all candidates for public office, as well as those citizens who make contributions to their campaigns.

With specific regard to the contribution to my campaign by George Patterson, I consider his contribution as evidence that a concerned citizen of Florida believed that I would be fair, honest and industrious in my approach to all matters that would come before the commission. His contribution was made in April of 1964, and since that time I have voted for several substantial rate reductions involving Florida Power & Light Company which, in amount, total more than $30 million on an annual basis. Such reductions are matters of common knowledge and must be given consideration in evaluating the likelihood of prejudice on my part for said utility.

There is no basis for any other interpretation of any contribution to any past campaign of mine for this office, nor is there any basis for a conclusion that any contribution was given or received with any intent to prejudice or influence any matter before me, nor create any bias on my part with reference to any matter that might come before the commission. Contributions to my various campaigns for this office always have been reported as required by the law, and such reports are a public record in the office of the secretary of state.

In a complete and minute examination of my conscience, and with great concern for my responsibility to all of the interests of all of the people of Florida, I find no evidence of bias or prejudice that would or could distort to any degree my impartial consideration of the rates and charges, and earnings, of Florida Power & Light Company in this investigation which was instituted by my fellow commissioners and me, on our own motion, in the performance of our duty to protect the public interest.